UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAUL VELLECA,

                          Plaintiff,

    v.                                                  9:20-CV-0887
                                                        (BKS/DJS)

ROBERT PANGBURN and FRED FORD,

                          Defendants.
_____

**APPEARANCES:**                                 **OF COUNSEL:**

PAUL VELLECA
20-B-0586
Plaintiff, *pro se*
Greene Correctional Facility
P.O. Box 975
Coxsackie, New York 12051

THE LAW FIRM OF FRANK W. MILLER, PLLC    FRANK W. MILLER, ESQ.
Attorney for Defendants                            THOMAS J. MURPHY, ESQ.
6575 Kirkville Road
East Syracuse, New York 13057

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

      Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 alleging that his constitutional rights were violated while he was incarcerated at the Delaware County Correctional Facility. Dkt. No. 1, Compl. Following initial review of the Complaint

1

under 28 U.S.C. §§ 1915(e) & 1915A, three claims remain: 1) an Eighth Amendment excessive force claim against Defendants Pangburn and Ford; 2) a First Amendment retaliation claim against those Defendants; and 3) a section 1983 conspiracy claim. Dkt. No. 4 at p. 18. Defendants have now moved for summary judgment. Dkt. No. 27. Plaintiff opposes the Motion, Dkt. Nos. 34 & 39, and Defendants have replied. Dkt. Nos. 35 & 40. For the reasons set forth below, the Court recommends that Defendants' Motion be denied.

## I. BACKGROUND

The events at issue took place while Plaintiff was housed at the Delaware County Correctional Facility. Compl. at pp. 4-5. On May 6, 2020, Plaintiff was involved in an incident with Defendants Pangburn and Ford that admittedly involved the use of force. *See* Dkt. No. 27-3, Use of Force Report. The facts and circumstances of that use of force, however, are highly disputed.

Plaintiff states that the force was an unprovoked assault. Compl. at pp. 5-7. Plaintiff alleges that Defendants entered his cell and stated that they wanted to speak with him about grievances he had filed. Dkt. No. 39, Pl.'s Decl. at ¶ 3. Plaintiff states that he told Defendants he did not wish to speak with them about his grievances and "simply asked them to leave." *Id.* at ¶ 4. According to Plaintiff, Defendants grabbed him from his bunk and pulled him to the floor. *Id.* at ¶ 6. He alleges that one Defendant used his knee to pin Plaintiff to the ground, that his head was slammed against the wall, and that

chemical agents were used. Compl. at p. 7. Plaintiff expressly denies that he charged at Defendant Ford and maintains that he complied with staff direction at all times. Pl.'s Decl. at ¶¶ 5 & 7.

Defendants present a different version of events. Neither Defendant has offered an affidavit in support of their Motion. In support of the Motion, they rely on statements[1] submitted in relation to the Use of Force report produced regarding this incident. According to those statements, Defendants went to Plaintiff's cell "to discuss his grievances." Dkt. No. 27-3, Use of Force Report at p. 6; *see also id.* at p. 8 (Defendants went "to speak to [Plaintiff] about his grievances."). According to Defendant Ford, Plaintiff became agitated and "moved quickly at me off the bed with his fist clenched while pulling it back as if to strike." Use of Force Report at p. 8. Defendant Pangburn recites a similar version of events in which Plaintiff "rose from his bunk quickly towards CO Ford with a clenched fist." *Id.* at p. 6. Defendants maintain that Plaintiff was then taken to the ground and handcuffed before being removed from his cell. *Id.* Defendants concede that a chemical agent was used during this encounter. *Id.* Defendants agree that a "Code Red" was called by Defendant Pangburn during the incident. Dkt. No. 27-8, Defs.' Rule 56.1 St. at ¶ 7.

---

[1] The statement of Defendant Ford appears to be sworn to under penalty of perjury, Dkt No. 27-3 at p. 8, but the same is not true of Defendant Pangburn's statement. *Id.* at p. 6.

## II. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(C); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). In considering a summary judgment motion, the Court's role "is carefully limited to discerning whether there are any genuine issues of material fact to be tried." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding pro se, the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), accord, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

#### A. Plaintiff's Excessive Force Claim

The Court recommends that summary judgment be denied as to Plaintiff's excessive force claim. "Excessive force claims frequently involve factual disputes that make them difficult to resolve pursuant to summary judgment." *Savage v. Acquino*, 2018 WL 1478254, at *7 (W.D.N.Y. Mar. 23, 2018). This case is no different.

5

"The Eighth Amendment prohibition on cruel and unusual punishments precludes the unnecessary and wanton infliction of pain and protects inmates against the use of excessive force." *Jones v. Rock*, 2013 WL 4804500, at *17 (N.D.N.Y. Sept. 6, 2013) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992); *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).[2] Eighth Amendment excessive force claims have both objective and subjective elements. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). "The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary standards of decency.'" *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. at 8). "The subjective component of the claim requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016) (quoting *Wright v. Goord*, 554 F.3d at 268).

The record before the Court is insufficient to recommend dismissing Plaintiff's excessive force case on the present Motion. It is not a close case. The submissions on the Motion make clear that a use of force took place inside Plaintiff's cell. According to Plaintiff that force was unprovoked and unnecessary. *See generally* Pl.'s Decl. at ¶¶ 3-7.

---

[2] Defendants argue that this claim is governed under a Fourteenth Amendment due process standard, Dkt. No. 27-9, Defs.' Mem. of Law at pp. 2-3. While that standard would apply if Plaintiff was a pretrial detainee, his actual status at the time of this incident is not clear from the record. The only reference to it is Defendants' statement that Plaintiff was "a post arrest and post disposition prisoner." *Id.* at p. 4. Plaintiff pled an Eighth Amendment violation, Compl. at p. 11, and the District Court found an Eighth Amendment claim survived initial review, Dkt. No. 4 at p. 18, and so that is the claim considered here.

Defendants maintain that Plaintiff aggressively moved toward Defendant Ford with a clenched fist. Use of Force Report at pp. 6 & 8. Plaintiff expressly denies that allegation. In opposing the Motion, Plaintiff states that "[a]t no time did Plaintiff approach Defendant Ford with a clenched fist or in a threatening manner." Pl.'s Decl. at ¶ 5. He maintains that he was compliant at all times. *Id.* at ¶ 7. Plaintiff contends that despite this compliance he was dragged from his bed, had his head slammed against a wall, and was sprayed with a chemical agent. *Id.* at ¶¶ 5-9.

> If plaintiff's testimony is credited, a reasonable factfinder could find the defendants' actions wanton and malicious. As plaintiff described, the need for force in response to compliant and non-threatening behavior could be deemed malicious. Plaintiff's testimony could establish that the use of force was an unnecessary tactic implemented not to restore or maintain order, but to maliciously assault an inmate for no apparent reason, which could constitute a per se constitutional violation.

*Brown v. Dubois*, 2017 WL 2983305, at *9 (N.D.N.Y. June 16, 2017), *report and recommendation adopted*, 2017 WL 2983011 (N.D.N.Y. July 12, 2017).

As a result, this case "presents quintessential fact questions that cannot be resolved on summary judgment." *McGinnis v. Crissell*, 2018 WL 4635707, at *4 (N.D.N.Y. Apr. 18, 2018), *report and recommendation adopted*, 2018 WL 3970668 (N.D.N.Y. Aug. 20,

2018).³ For these reasons, Defendants' Motion for Summary Judgment should be denied as to the excessive force claim.⁴

### B. Plaintiff's Retaliation Claim

Plaintiff asserts a First Amendment retaliation claim alleging that the assault at issue took place, at least in part, to retaliate against Plaintiff for the exercise of his constitutional rights. Compl. at pp. 5-7. Defendants seek summary judgment on this claim on the ground that it is "legally deficient" because Plaintiff has offered no evidence to support his allegations. Defs'. Mem. of Law at p. 5.

"To prevail on a First Amendment retaliation claim, an inmate must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action.'" *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). The plaintiff must establish that "the protected conduct was a substantial or motivating factor" behind the retaliatory action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). The Second Circuit has warned that "courts must approach prisoner claims of retaliation with

---

³ The Court notes, in addition, that the same questions of fact would preclude summary judgment even if the claim were considered under the Fourteenth Amendment due process theory briefed by Defendants.

⁴ Those same factual questions also preclude granting summary judgment based on qualified immunity since the right to be free from excessive force is clearly established. *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) ("Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness."); *Kavanaugh v. Vill. of Green Island*, 2018 WL 1033288, at *6 (N.D.N.Y. Feb. 22, 2018); *Swift v. Mauro*, 2008 WL 207793, at *7 (N.D.N.Y. Jan. 24, 2008).

8

skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983)). This is true because given the nature of a retaliation claim they are "easily fabricated" and as a result "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d at 491.

The first element of Plaintiff's retaliation claim is the presence of protected activity. *Holland v. Goord*, 758 F.3d at 225. An inmate's filing of grievances is clearly activity protected by the First Amendment. *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citing cases). There is no dispute that the interaction between Plaintiff and Defendants on May 6th began when Defendants came to Plaintiff's cell to discuss grievances he had filed. Compl. at p. 5; Defs.' Rule 56.1 St. at ¶ 2.

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Dawes v. Walker*, 239 F.3d at 493. Plaintiff has also plausibly alleged that he suffered such action. He claims he was assaulted by Defendants as a result of his grievances. Compl. at pp. 5-7. Plaintiff's "claim regarding the retaliatory assault sufficiently describes adverse conduct that would deter a reasonable inmate from exercising his constitutional rights." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing cases).

9

Defendants argue, in rather conclusory fashion, that Plaintiff's claim is itself conclusory. Defs.' Mem. of Law at p. 5. They rely on the lack of "independent proof" to support Plaintiff's claims. *Id.* On summary judgment the record must be viewed in the light most favorable to Plaintiff. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). As noted, the record before the Court is that Defendants admittedly went to Plaintiff's cell to discuss prior grievances filed by Plaintiff. Defs.' Rule 56.1 St. at ¶ 2. Viewed in the light most favorable to Plaintiff, he refused to discuss the grievances with Defendants, and Defendants, including Pangburn, who is alleged to have discussed becoming involved in a use of force with Plaintiff just the night before, proceeded to assault Plaintiff. Pl.'s Decl. at ¶¶ 3-7 & 10. That evidence is sufficient for purposes of summary judgment to at least raise a question of fact as to the causal connection element. *See Espinal v. Goord*, 558 F.3d at 129 ("we find that the passage of only six months between the dismissal of Espinal's lawsuit and an allegedly retaliatory beating by officers, . . . is sufficient to support an inference of a causal connection."). In sum, "[t]he questions of fact that preclude summary judgment on Plaintiff's excessive force claim, . . . lead to a similar conclusion here." *Vasquez v. Russell*, 2018 WL 5728041, at *6 (N.D.N.Y. Aug. 10, 2018), *report and recommendation adopted*, 2018 WL 4521203 (N.D.N.Y. Sept. 21, 2018); *see also Barnes v. Fischer*, 2018 WL 5660414, at *18 (N.D.N.Y. Mar. 16, 2018), *report and recommendation adopted*, 2018 WL 4660380 (N.D.N.Y. Sept. 28, 2018) (similar).

Accordingly, the Court recommends that Defendants' Motion be denied.[5]

### C. Plaintiff's Conspiracy Claim

Finally, the Court previously recognized that the Complaint also asserts a section 1983 conspiracy claim. Dkt. No. 4 at pp. 16-17. Defendants also seek dismissal of this claim on the ground that there is simply no evidence to support it. Defs.' Mem. of Law at pp. 6-7.

"To sustain a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a defendant acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights . . . secured by the Constitution or the federal courts. Conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983." *O'Neil v. Bebee*, 2010 WL 502948, at *9 (N.D.N.Y. Feb. 10, 2010) (internal citations and quotation marks omitted). Here, however, Plaintiff specifically alleges that Defendants conspired against him the day prior to the use of force. He alleges that Defendant Pangburn told another officer the night before this incident that he planned to call a "code red" regarding Plaintiff the next day. Pl.'s Decl. at ¶ 10. A "code red" was called by

---

[5] Defendants also seek qualified immunity with respect to this claim on the ground that the right is not clearly established. Defs.' Mem. of Law at p. 9. However, "[i]t was clearly established in 2006 that officers could not assault an inmate by slamming his head into the wall in retaliation for the filing of grievances." *Quezada v. Ercole*, 2011 WL 3251811, at *6 (S.D.N.Y. July 29, 2011); *see also Edwards v. McGrain*, 2012 WL 6701826, at *8 (W.D.N.Y. Dec. 26, 2012). Given the factual questions presented, qualified immunity is not appropriate.

Pangburn during the use of force the next day. Defs.' Rule 56.1 St. at ¶ 7. In light of these allegations,

> If the plaintiff's account is believed by a jury, then the defendants were not coordinating to implement official policy, but rather acting in concert to exact retaliation that was personal, rather than official, in nature. The defendants also argue that the section 1983 conspiracy claim is not supported by evidence, but rests instead on purely conclusory allegations. The jury could conclude that the plaintiff's account of his [assault] provides sufficient circumstantial evidence of coordination to prove a meeting of the minds regarding the retaliatory [assault] of the plaintiff. The section 1983 conspiracy claim presents questions of fact that must go to a jury.

*Walsh v. City of New York*, 2016 WL 3648370, at *3 (S.D.N.Y. June 30, 2016) (internal quotation and citation omitted).

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 27) be **DENIED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[6] within which to file written objections to the foregoing report. Such objections shall be filed

---

[6] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: June 2, 2022
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge